UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re:  EDWIN HAROLD HEFFNER and            :
          CINDY JEAN HEFFNER,                        :          Case No. 05-26495REF
                              Debtors                      :          Chapter 13

# OPINION SUPPORTING AND SUPPLEMENTING MARCH 14, 2007 ORDER THAT (1) VACATED ORDER DATED MARCH 12, 2007, (2) APPROVED, WITH SOME REDUCTION OF FEES, COUNSEL'S APPLICATION FOR COMPENSATION, AND (3) SANCTIONED COUNSEL BY FURTHER REDUCING THE FEES AWARDED TO HIM

## I.  BACKGROUND

On March 14, 2007, I issued my written Order vacating my Order dated March 12, 2007, which had approved in full a request for attorneys' fees for Debtors' counsel, Eric L. Leinbach, Esquire ("Mr. Leinbach") (the "March 14 2007 Order").  The March 14 2007 Order vacated an Order entered two days previously and reduced the compensation requested by Debtors' counsel because he sought payment for two hours of time for attending a meeting, but failed to pro-rate his time at the meeting among all of his clients for whom he had appeared at the meeting.  I reduced the compensation sought by the amount of the requested fee for the meeting.  I also reduced counsel's requested compensation by a slightly higher, additional amount as a sanction, because this sort of overcharge was not the first of its nature that I have seen from Mr. Leinbach.  Mr.

1

Leinbach filed an appeal from the March 14 2007 Order on Friday, March 23, 2007, and I

am filing this Opinion supporting and supplementing my March 14 2007 Order pursuant

to Eastern District of Pennsylvania Bankruptcy Court Local Bankruptcy Rule 8001-1(b).[1]

The discussion below represents my findings of fact and my conclusions of law.


## II.  PROCEDURAL BACKGROUND


Debtors, through their counsel Mr. Leinbach, filed this Chapter 13

bankruptcy case on October 6, 2005.  Two weeks after the initial filing, Mr. Leinbach

filed his Rule 2016 Disclosure of Compensation by Attorney, disclosing that he had

charged Debtors $1,194 as his fee in this case and that he had received a retainer/deposit

of $656.  Debtors are multiple filers, having filed a prior Chapter 13 case that had been

dismissed.[2]   In June 2006, Mr. Leinbach revised his Disclosure of Compensation,

---

[1]Local Rule 8001-1(b) provides: "(b) *Opinion in Support of Order*.  The bankruptcy
judge whose order is the subject of an appeal may, within 15 days of the filing of the notice of
appeal, file a written opinion in support of the order or a written supplemental opinion that
amplifies any earlier written opinion or recorded oral bench ruling or opinion."
L.B.R. 8001-1(b) (2005).
    The SOURCE note for Rule 8001-1 explains: "This rule is derived from L.A.R. 3.1 of the
Third Circuit's Local Rules.  Under subdivision (b) of this rule, a bankruptcy judge has the same
opportunity as a district judge to file an opinion after an appeal has been taken."

[2]Debtors filed their first (as noted in the CM/ECF system) Chapter 13 case on October 9,
2003 (No. 03-25436), which case was dismissed on October 6, 2005.  Debtors' second case, the
case at bar, was filed on the same day that their first case had been dismissed.

increasing it to $2,835.[3]

On September 27, 2006, Mr. Leinbach filed his First Application for

Compensation (the "Application"), requesting approval of $2,835 of fees and noting that

he had already been paid $656.  As with all debtors in bankruptcy, Debtors had been

required to attend a Section 341 first meeting of creditors[4] on December 27, 2005, and

were represented there by Glenn T. Roth, Esquire ("Mr. Roth"), an attorney affiliated with

Mr. Leinbach.  My reduction of the fees resulted from Mr. Leinbach's charge of 2.0 hours

for Mr. Roth's attendance at the meeting, despite his attending other Section 341 meetings

on behalf of more than a dozen other clients that day.  Initially, on March 12, 2007, I had

approved the Application.  The next day and the day after that, as I was reviewing other of

Mr. Leinbach's fee applications, I noted duplicate charging for the December 27, 2005

creditors' meeting and I entered the March 14 2007 Order, vacating and replacing the

prior order and reducing the awarded fees.  My reduction of fees led to the present appeal.


### III.  REVIEWS OF FEE APPLICATIONS GENERALLY AND OF MR.

---

[3]Many attorneys, including Mr. Leinbach, do not feel obliged to live within their initially
disclosed compensation.  Although the Disclosure form includes the ability to note that certain
additional fees might be required under certain circumstances, many lawyers do not use that
provision.  Their practice is to simply increase the required fee and file an amended Disclosure,
as Mr. Leinbach did in this case.

[4]Section 341 of the Bankruptcy Code requires that the Trustee, in each case, schedule and
conduct a meeting of creditors within a reasonable time after the bankruptcy case is initiated.  11
U.S.C. §341(a).

## LEINBACH'S IN PARTICULAR

### A.  Review of Fee Applications Generally

I was appointed to sit in the Reading Division of the Eastern District of Pennsylvania in February 2006.  Although I had been involved to some extent with consumer debtors' counsel fees, I did not have substantial experience.  Over my first six months or so as a judge, I reviewed dozens, certainly more than a hundred, consumer debtors' fee applications for counsel.  In the course of that review I became familiar with the "going rate" charged by consumer debtors' attorneys and the amount and range of fees that might be charged in Chapter 13 attorney compensation cases.[5]  As part of my ongoing responsibility to review fees, even if uncontested,[6] I would review counsels' lists of their time entries for various tasks they had performed for their debtor-clients.  Within the first few months of sitting as a Bankruptcy Judge, I set hearings on otherwise uncontested fee applications for most of the attorneys who regularly practice bankruptcy before me.  I saw that a large proportion of the fee applications were under the "no look"

---

[5]Since 2004, when the United States Supreme Court dispensed with the award of attorneys' fees from Chapter 7 debtors' estates to their counsel in Lamie v. United States Trustee, 540 U.S. 526, 1245 S. Ct. 1023 (2004), this Court does not review or approve Chapter 7 debtors' attorneys' fee applications for payment by the estate.

[6]See In re Busy Beaver Building Centers, Inc., 19 F.3d 833, 840-45 (3d Cir. 1994).  See also the discussion of Busy Beaver below, for the duty of Bankruptcy Courts to review attorneys' compensation applications sua sponte, even if no other party to a proceeding objects or contests the application.

threshold of $2,000.[7]   A very large percentage of fee applications were under $3,500.

But some of the fee requests exceeded $3,500.  Initially, I set hearings sua sponte for fee

applications that appeared unusual or that were in excess of $3,500,[8] and I asked counsel

to explain what they had done for the relatively higher fees in their applications.  When

Mr. Leinbach testified in the Summer of 2006 about his fee applications for which I had

set a hearing, I was surprised to learn that he had no contemporaneous time-keeping

system, either manual with a time-sheet and a pencil or through computerized software.  I

will more fully discuss Mr. Leinbach's "after-the-fact" creation of time records later in

this Opinion.

        In the course of my examination of numerous fee applications, I noticed that

some fees stood out as aberrations, being higher on average than others for similarly

complex cases.  When I refer to noticing aberrations on average, I do not mean to imply

any precise, methodical, or organized review or calculation.  I mean simply that as I

reviewed the many fee applications, a framework of sorts developed in my mind and I saw

that some counsels' fees were consistently higher than most others (I also saw that some

requests for fees were consistently lower).  I also noticed several time entries of several

---

[7]Local Bankruptcy Rule 2016-2(a) permits counsel to dispense with specific, individual time entries and to file for a lump-sum fee if the total compensation for counsel in the case will be $2,000 or less.  This is referred to colloquially as a "no look" fee.

[8]I tried to avoid loss of productive time for counsel by scheduling these hearings on dates on which counsel would be in court for some other matter.  I continue to do this.  For example, on March 28, 2007, I approved the continuance of a hearing for another of Mr. Leinbach's fee applications because he had nothing else on my calendar the day it would have been heard.

hours for specific tasks performed, particularly for attending hearings and for attending

Section 341 first meetings of creditors.[9]  I also noticed that Mr. Leinbach was and is the

only attorney seeking approval of fees that were charged in 1/8-hour increments of time.

Most other law firms charge time in 1/10-hour increments.  I have not heretofore regarded

this as an issue because some attorneys who bill in 1/10-hour increments rarely list an

event whose time is 0.10 hours.  I have not yet determined that billing in minimal

increments of 1/8-hour is per se unreasonable.


B.  Review of Mr. Leinbach's Fee Applications

            In my first half-year review, a disproportionate number of the fee

applications that appeared to be higher than the norm, taking into account the complexity

and number of tasks performed, were Mr. Leinbach's.  Many of the fee applications in

which abnormally high numbers of hours were charged for hearings or creditors' meetings

were also Mr. Leinbach's.  I do not state these general references as substantive support

for any of the discussion below about what Mr. Leinbach did and did not do in his fee

application in this matter.  I provide this reference solely to establish how and why I

started to scrutinize Mr. Leinbach's fee applications more particularly in Fall 2006.

            I also note at this point that Mr. Leinbach is a highly effective and tenacious

advocate for his clients' interests in Bankruptcy Court.  He is a bright and aggressive

---

[9]See footnote 4, above.

6

attorney who knows many procedural and substantive methods to establish, protect, and enhance his clients' rights and remedies.  Despite his tenacity and ability, I have had no attorney who has been the subject of as many complaints by his existing and former clients relating to his refusal to represent them, generally when they could not pay him some additional retainer or agree to some increase in his fee.  Unfortunately, difficulties between clients and counsel occur, but Mr. Leinbach is the only attorney practicing before me who has had more than one such complaint voiced against him.  A number of his clients have complained on numerous occasions.[10]  These complaints from Mr. Leinbach's clients are not presented to support the March 14 2007 Order; rather, they are offered in support of my belief that Mr. Leinbach's approach to his fees and compensation, which I had seen in the Summer and Fall of 2006, warranted my closer attention and scrutiny.

C.  Initial Review and Reduction of Overcharges in Mr. Leinbach's Fee Applications

When I started to review Mr. Leinbach's applications more closely in the Fall of 2006, I noted what appeared to be instances in which Mr. Leinbach was charging

---

[10]See, e.g., In re Papp, No. 06-20973 (Mr. Leinbach's entire initial retainer was ordered disgorged by my Order of October 26, 2006, granting the motion for disgorgement pressed by the United States Trustee).  If Mr. Leinbach develops difficulties with his clients, or if fee disputes arise that cause him, in his professional judgment, to withdraw as counsel, he may do so and he has done so.  See In re Muzzicato, No. 03-24512 (Mr. Leinbach was ordered to continue his representation of his client until his request to withdraw was granted, which request was ultimately granted).  But as long as he represents his clients and does not withdraw as counsel, Mr. Leinbach's professional duty is to represent them and their interests in court proceedings that arise. Unfortunately, I have had more than one client of Mr. Leinbach appear in Court without him, telling me that Mr. Leinbach wanted an additional fee, but the client could not afford it.

one debtor/client the full amount of time for traveling to and attending a hearing or creditors' meeting, when he (or some other attorney in his firm) had actually represented two or three or more other clients at hearings or meetings on the same date in the same courtroom or meeting room. Despite his representation of multiple clients at these hearings and meetings, Mr. Leinbach did not pro-rate the time among the clients in his fee applications.[11] In other words, it appeared that Mr. Leinbach was double billing, triple billing, and more for attending hearings and creditors' meetings for multiple clients. This is precisely the type of over-billing that occurred in this case, and I will analyze this method of overcharging in more detail below.

Not wishing to embarrass Mr. Leinbach by addressing this discovery in public, in November 2006, I had an off-the-record sidebar conference with him and counsel for the Chapter 13 Trustee, during a hearing on other cases, in which I told him that I had seen this overcharging in some of his bills and I would simply deduct some of his requested fees in orders otherwise approving his fees. Mr. Leinbach was apologetic and promised to examine other fee applications more carefully to ensure that this would not happen again.[12]

---

[11]To investigate his over-charging, I would (a) note that Mr. Leinbach (or another attorney in his office) had charged a certain amount of time for a hearing or meeting, (b) look at records of other hearings or meetings that day, (c) review other relevant court records, and (d) note the number of his clients that Mr. Leinbach (or another attorney) had represented that day.

[12]Following this side-bar, I reduced the fees in In re Kaminski, No. 01-25537 (order dated November 14, 2006) and In re Ross, No. 03-23788 (order dated November 27, 2006) among other cases.

D.  Reductions of Mr. Leinbach's Fee Applications

On November 16, 2006, I held hearings in two cases solely to review Mr.

Leinbach's fee applications.[13]  Because it appeared to me generally that the fees charged

were excessive for the work undertaken and the results achieved, I reduced both of the fee

requests.[14]  As with my previous, generalized review of Mr. Leinbach's fee applications

that I undertook in my first six months on the bench, I do not relate these cases to

establish that Mr. Leinbach has overcharged in the case at bar.  I refer to them for two

reasons:  First, to show my steps in dealing progressively with his overcharging; and

second, to support the imposition of sanctions against Mr. Leinbach, discussed in more

detail below.

E.  Review and Reduction of Mr. Leinbach's Fee Applications in 2007

In early 2007, I noticed two cases that were similar and in which Mr.

Leinbach was counsel for debtors.  Both cases had been dismissed, and Mr. Leinbach

pursued his fee requests.  Both cases were similar in the negative results obtained for his

clients, but one case, In re Faust, No. 06-20794, took six months with very few

adversarial events occurring through that time, while the other case, In re Wasilewski, No.

05-29021, took over a year to administer, including many disputes with creditors and

---

[13]In re Sherer, No. 03-21188; and In re Williams, No. 04-20617.

[14]Williams (order dated December 18, 2006); Sherer (order dated January 10, 2007).

9

other parties in interest along the way.  The shorter, less conflict-laden <u>Faust</u> case had

roughly the same time charged and had a somewhat higher request for compensation.

Having noticed this oddity, I examined both cases and held a hearing on February 1,

2007, for a review of Mr. Leinbach's fee applications in both cases.  Through the course

of the hearing, I learned that Mr. Leinbach (or an attorney in his office) had failed to pro-

rate the time attributed to creditors' meetings among all of his clients for whom he had

performed the work.  In the <u>Faust</u> case, Mr. Leinbach's office charged to the debtors all of

the time (5.0 hours) for traveling to and attending a number of creditors' meetings in

which an attorney from his office represented several of their clients that day.   The time

and fee were not prorated among all of his clients represented at these meetings.  I

approved his requested fee in <u>Faust</u>, but I reduced it from $3,875 to $3,200.[15]  The same

basic overcharge occurred in the <u>Wasilewski</u> case.  Again, I approved his requested fee,

but I reduced it from $3,520 to $3,020.[16]

　　　　Mr. Leinbach also testified in the hearings on February 1, 2007, that he had

acquired and had started to use a computerized time-keeping system in the Fall of 2006,

but that, in the <u>Faust</u> and <u>Wasilewski</u> cases, the time records had been compiled by going

back through the files to try to resurrect some idea of what was done on behalf of the

---

[15]<u>In re Faust</u>, No. 06-20794 (order dated February 1, 2007) (although I had a sense that
the overall fee, even as reduced, remained too high for the work performed, I could not point
specifically to anything else and I therefore did not reduce his fee below $3,200).

[16]<u>In re Wasilewski</u>, No. 05-29021 (order dated February 1, 2007) (unlike in <u>Faust</u>, my
sense was that Mr. Leinbach's fees, after the reduction, were supported by the work undertaken
in this case).

client and how long it took.  Non-contemporaneous, after-the-fact re-creation of time

entries is clearly a deficient and inappropriate method of time-keeping.  The much more

appropriate contemporaneous time keeping that Mr. Leinbach now uses will, hopefully,

eliminate problems with his fee applications.

In the February 1, 2007 hearing, Mr. Leinbach and a paralegal from his

office testified that his staff would go through a file when he decided to bill it (generally

long after the work was actually performed), would look for any notations of time on

documents that were in the file, would estimate the time if no notation existed, and would

transpose the time entries into some word processing document that was not produced in

evidence for me.  Apparently, his staff would also look for hearings and meetings within a

case's electronic, on-line docket and guesstimate the amount of time spent in attending

any such hearing or meeting.  Mr. Leinbach's staff appears to charge an identical, fixed

amount of time for particular tasks regardless how much (or little) time was actually

incurred to accomplish the task.  But that was the only way his office could create time

records when none existed because they have no idea how much time was actually

incurred.[17]

---

[17]My description of the efforts undertaken long after the fact by Mr. Leinbach's staff to
create some record of time spent in a matter when no such record exists is similar to all of my
other conclusions and analyses of information I have received about his efforts to create time
entries in his fee applications.  That is, I did not and do not now use for this case my assumptions
about his system and directions to his staff in other cases, other than to note that, in case after
case, it simply did not and does not work.  None of these assumptions, however, was used to
determine whether the charges in the Application in this case were legitimate or otherwise.  My
experiences with Mr. Leinbach's fee applications in these other cases does, however, support my
imposition of sanctions against him, as discussed in more detail below.

11

## IV.  MR. LEINBACH'S FEE APPLICATION IN THIS CASE

At the time that Mr. Leinbach's Application in this case came to my attention, I had noted all of the preceding overcharges (and more) by Mr. Leinbach in the cases cited above and in his other fee applications.  Furthermore, before my review of the Application in Heffner, I had considered and ruled upon Mr. Leinbach's fee application in In re Wise, No. 02-20931, in which Mr. Leinbach actually sought to be paid for three hours for a hearing that he clearly did not attend.  In re Wise, No. 02-20931 (Order dated March 8, 2007; Memorandum Opinion Supporting and Supplementing March 8, 2007 Order, Which (1) Granted, But Reduced, Counsel's Application for Attorneys' Fees and (2) Sanctioned Counsel by Further Reducing the Fees Awarded, dated April 3, 2007).[18] When I first received the Application in this case, I reviewed it and issued my Order dated March 12, 2007, approving it.

A.  Reduction of Mr. Leinbach's Fees for Overcharging for Attending a Creditors' Meeting on Behalf of Debtors When He Was Also Attending Other Creditors' Meetings for Other Clients on the Same Day

After my review of other fee applications of Mr. Leinbach on March 13, 2007, however, I looked more closely at the Application in this case on March 13 and 14, 2007, and I noticed a discrepancy in the time charged for attending the creditors' meeting.

---

[18]Mr. Leinbach has appealed my decision in In re Wise, No. 02-20931.

I then reviewed the time entries in the Application more carefully to see if they were

legitimately charged; I discovered an error.  Mr. Roth, the attorney working for Mr.

Leinbach, had charged 2.0 hours of time for attending the creditors' meeting on December

27, 2005.  His 2.0 hour time entry for the meeting was an overcharge because he attended

meetings on behalf of numerous other clients on that same day.

      In footnote 1 of my March 14 2007 Order, I explained in detail why I am

certain, and find as a fact, that Mr. Leinbach overcharged the estate for Mr. Roth's

attendance at the meeting.  Footnote 1 of my March 14 2007 Order states:

>       In Mr. Leinbach's Application, he includes a time entry for Glenn T. Roth,
> Esquire, an associate in his office, on December 27, 2005, that reads: "Preparation,
> conversation with client, appearance and travel to and from Meeting of
> Creditors."[19]   On that day, immediately preceding Debtors' meeting of creditors,
> Mr. Roth appeared for four other Debtors in their creditors' meeting.  In re Honey,
> No. 05-23597; In re Smith, No. 05-25788; In re Handelong, No. 05-25875; and In
> re Melhem, No. 05-26136.  And also on that day, immediately following Debtors'
> meeting of creditors, Mr. Roth appeared for three other Debtors in their creditors'
> meeting.  In re Eller, No. 05-26598; In re Lande, No. 05-26604; and In re Heater,
> No. 05-26612.  Later in the same afternoon, Mr. Roth appeared for another ten
> client/debtors.  Mr. Leinbach attributes and charges for two (2) hours for the
> creditors' meeting in his time records, which amount of time I reject.  In an
> abundance of caution, Mr. Roth could have left his Lehigh Valley office at 12:30
> (or at 12:00 at the earliest) to attend the 2:00 creditors' meetings in Reading.  The
> eight [sic][20] meetings were scheduled back to back, taking maybe three hours

---

[19][This footnote was not in the original March 14 2007 Order.]  Mr. Leinbach uses block
billing for describing attendance at hearings or meetings.  He will typically lump together any
number of the following tasks or others in various fee applications: Review file; prepare for
hearing/meeting; travel to hearing/meeting; conference with client; conference with opposing
attorney; and others.  This strategy allows him to augment and manipulate the times of
attendance at and travel to the hearing/meeting.

[20][This footnote was not in the original March 14, 2007 Order.]   Although it does not
change the result, I note my error of ascribing only eight creditors' meetings to Mr. Roth's

altogether, and the return trip would be less than an hour and a half, for a total of about six hours or so.  Mr. Leinbach seeks to charge Debtors for two (2) hours of time for their creditors' meeting alone, rather than the actual time per meeting of about twenty minutes or so, and I hereby reject the request for payment of his fees for attending the creditors' meeting.

In re Heffner, No. 05-26495 (Order dated March 14, 2007).

Mr. Roth clearly attended the creditors' meeting on behalf of Debtors in this case.  But for Mr. Leinbach's staff to create a record that charges two hours for that day to this case when Mr. Roth appeared in a single afternoon between 2:00 p.m. and 5:00 p.m. for so many clients, whether eight or eighteen, is outrageous.  Mr. Leinbach may claim[21] that the time entry included preparation and conferences with his clients, to which I have two responses.  First, often when Mr. Roth appeared before me for clients of Mr. Leinbach's office, he would remark that he had "just received" the file or that he had not spoken with anyone about a matter.  The practice of Mr. Leinbach in sending Mr. Roth to meetings and hearings in his stead was generally for Mr. Roth to pick up the file and deal with the matter without being fully familiar with the file.  To suggest that Mr. Roth expended any significant time in "preparing" for a creditors' meeting contradicts the usual and normal practice of Mr. Leinbach of assigning hearings to Mr. Roth immediately prior to the date on which they occurred.

---

handling rather than the correct eighteen.

[21]I comment that Mr. Leinbach "may claim" this defense because Mr. Leinbach elected not to request my reconsideration of the March 14 2007 Order pursuant to Fed. R. Bankr. P. 8023 and L.B.R. 2016-1(f), which Local Rule is discussed at more length later in this Opinion.

14

Second, and more telling to me, if Mr. Leinbach were to suggest that, in every of the eighteen creditors' meetings that day, Mr. Roth spent two hours preparing for the meeting, speaking with the clients about the meeting, traveling to the meeting, and attending the meeting, simple arithmetic means that he would have billed 36 hours that day.

Quite simply, therefore, Mr. Leinbach's Application failed to prove to me that the 2.0 hours claimed for the December 27, 2005 creditors' meeting, were actually incurred and earned.  Mr. Leinbach carries the burden of establishing that the requested fees were actually earned.  See Younger v. Pennsylvania Resources Corp. (In re Younger), ___ B.R. ___, No. 04-29034, Adv. No. 04-3292, 2006 WL 3931552, at *5 (Bankr. W.D. Pa. Dec. 14, 2006), citing Zolfo Cooper & Co. v. Sunbeam-Oster Co., Inc., 50 F.3d 253, 261 (3d Cir. 1995).  To the extent that Mr. Leinbach claims that he did not have the opportunity to supplement the meager description of his time in the Application, he is totally mistaken.  I will discuss in detail below the due process rights that were and are afforded to Mr. Leinbach, which would have allowed him to present any supplemental information that he believed would have assisted him in seeking reconsideration of the March 14 2007 Order.

I refer now to the remarkably similar circumstances in a fee application faced by the Bankruptcy Court for the Northern District of Indiana.  In re Walker, No. 89-11748, 1991 WL 186585 (Bankr. N.D. Ind. May 21, 1991).  In Walker, the court substantially reduced a fee requested by counsel who had charged time for hearings that

15

he had not attended and had over-charged for hearings he did attend on days in which he appeared for multiple clients. Walker, 1991 WL 185585, at *6-9. The Walker court's review of that very similar issue is informative and instructive for me,[22] and much of the nature of my review and investigations of court records was quite similar to that of the Walker court.

B.  No Reduction in Fees for Mr. Leinbach's Charging New Rates to Old Time

In my preparation of this Opinion, I discovered a further overcharge in Mr. Leinbach's Application, but because the Application is on appeal, I lack the power or jurisdiction to further reduce the fees. But I note this issue in my effort to have this Opinion fully reflect my review of the Application. Sometime in 2006, Mr. Leinbach started to apply new rates to old time entries. His standard, ordinary rate charged for 2004 and 2005 time was $180/hour. His standard, ordinary rate charged for 2006 time was $240/hour. This was a 33% increase that Mr. Leinbach has justified by saying he had charged the $180 rate for quite some time. His standard, ordinary rate charged for 2007 time, however, is now $280/hour. This is a 17% rate increase in one year's time. I do not presently take issue with Mr. Leinbach's new, 2007 rate. Mr. Leinbach is an experienced, senior attorney, for whom the rate of $280/hour might be appropriate (this issue has not yet come before me). Most consumer debtors' attorneys who practice before me charge

---

[22]The Walker court's procedural approach to protecting counsel's due process rights may run contra to the Busy Beaver decision, but it is otherwise instructive.

less, but a few (not many) other consumer debtors' attorneys charge at that rate or slightly

higher.  Mr. Leinbach has tried in other cases, however, to charge his increased 2006 rates

for time incurred in prior years, which I have not knowingly permitted.   See, e.g., In re

Gray, Case No. 03-25573 (order dated March 27, 2007, reducing Mr. Leinbach's fee

because he used his 2006 rate of $240/hour for time incurred in 2004, when his rate was

$180/hour).[23]

  In this case, Mr. Leinbach's Application includes 4.25 hours of time in

2005, when his hourly rate was $180.  He billed that 2005 time, however, at the 2006

hourly rate of $240, which resulted in an additional overcharge in the Application of

$135.[24]  But, as I noted above, I do not have the jurisdiction to address this additional

overcharge because my treatment of the Application is subject to a pending appeal.


## V.  The Court's Power and Duty To Review Sua Sponte Counsels' Fee Applications


  The 1994 decision of the Third Circuit Court of Appeals in In re Busy

Beaver Building Centers, Inc., 19 F.3d 833 (3d Cir. 1994), described my powers and

responsibilities as a Bankruptcy Judge in reviewing counsels' fee applications.  Every

---

[23]Although my Order in the Gray case was not written until after the March 14 2007
Order in this case, it serves as a good example of Mr. Leinbach's application of new rates to old
time.

[24]The rate change of $60 applied to the 4.25 hours is, of course, $255.  But two of the
4.25 hours are Mr. Roth's time for attending the creditors' meeting, which is otherwise
disallowed through the March 14, 2007 Order.

Bankruptcy Court in the Third Circuit has relied upon, and most courts have described, the Third Circuit Court's prescription of a court's powers and requirements for reviewing fee applications.  I will not reiterate the background or any of the Busy Beaver approach to secretarial/paralegal time, because they are not at issue in this matter.  Busy Beaver is important here for two reasons.  First, it establishes not only my power, but my duty, to review sua sponte, counsels' fee applications.  Second, it sets forth certain precepts that courts shall follow to protect counsels' due process rights in the review of fee applications when no other party has objected.  Again, both of these issues have been addressed and analyzed by numerous prior courts, so I will only summarize Busy Beaver's guidance for me.

A.  Power and Duty of Bankruptcy Court To Review Fee Applications Sua Sponte

      Sections 105[25] and 330[26] of the United States Bankruptcy Code and Federal

---

[25]Section 105(a) of the Bankruptcy Code is clear and compelling authority for my power to review, sua sponte, a fee or expense application.  Busy Beaver, 19 F.3d at 841.  Section 105(a) provides in part:

> No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

[26]Section 330 states that "the court may, on its own motion or on the motion of [others] award compensation that is less than the amount of compensation that is requested."  11 U.S.C. § 330(a)(2).

Rule of Bankruptcy Procedure 2016[27] provide broad support for both my power and my

duty to review counsels' fee applications sua sponte without regard to whether an

objection has been advanced by some other party.  <u>Busy Beaver</u>, 19 F.3d at 841-45.

Going beyond saying that Bankruptcy Courts have the power to review fee applications

sua sponte, the Third Circuit found "a <u>duty</u> to review fee applications, notwithstanding

the absence of objections" by other parties.  <u>Busy Beaver</u>, 19 F.3d at 841 (emphasis in

original).


<u>B.  Due Process Protections Upon a Court's Review of a Fee Application</u>

                The Third Circuit did not leave the review of fee applications in a

procedural vacuum, but explained in some detail the protections, including a right to a

hearing, that must be accorded to counsel whose fee application has been rejected or

reduced.  <u>Busy Beaver</u>, 19 F.3d at 845-48.  <u>Busy Beaver</u> reviewed differing approaches to

ensuring that counsel have their due process rights protected.  First, a court may note

(presumably through some order) its specific concerns and allow counsel to supplement

the fee application in response thereto before holding a hearing and issuing an order on

the application.  <u>Busy Beaver</u>, 19 F.3d at 846.  Second, a court may rely on the general

---

[27]Rule 2017(b) expressly spells out my power to review fee applications of a debtor's
counsel on my own initiative.  <u>Busy Beaver</u>, 19 F.3d at 841.  Rule 2017(b) provides:
> On motion of [others] or on the court's own initiative, the court after notice and a
> hearing may determine whether any payment of money or transfer of property, or any
> agreement therefor, by the debtor to an attorney after entry of an order for relief in a
> case under the Code is excessive  . . . .
Fed. R. Bankr. P., Rule 2017(b).

standards for reconsideration of an order.  <u>Busy Beaver</u>, 19 F.3d at 846, quoting <u>In re</u>

<u>Pettibone Corp.</u>, 74 B.R. 293, 300-01 (Bankr. N.D. Ill. 1987).

>        The Third Circuit noted the mandate on courts to allow the fee applicant the

opportunity, if a request is made to the court, to present evidence or argument that the fee

application is sufficient.  The Circuit Court went on to explain that, to make the hearing

meaningful, the court should first apprise the fee applicant of the particular questions and

objections it harbors.  <u>Busy Beaver</u>, 19 F.3d at 846.  The Court's statements on providing

due process were all made in the context of dealing with a good faith fee applicant, one

who reasonably attempts to comply with the statutory dictates and the federal and local

rules.  I find that Mr. Leinbach's (1.) over-charging for Mr. Roth attending the December

27, 2005 creditors' meeting when Mr. Roth had also attended creditors' meetings on

behalf of multiple other clients on that same day and (2.) advancing a fee application with

the same type of error contained in many previously rejected fee applications constitutes

bad faith.  I believe, nonetheless, that Mr. Leinbach was and is entitled to the due process

protections as explained by the Third Circuit Court in <u>Busy Beaver</u>.


<u>C.  Eastern District of Pennsylvania Protection of Due Process in Fee Applications</u>

>         The Third Circuit Court required, as one procedural mechanism, a court to

give notice of specific issues with the fee application first and then hold a hearing.

Alternatively, the Third Circuit required a court that denies some amount of the fee

without a hearing to notify the applicant of its particular reasons for denying the fees, and,

if counsel desires to do so, to allow counsel the occasion to defend the fee application

with argument or evidence at a hearing.  The United States Bankruptcy Court for the

Eastern Pennsylvania has provided precisely this latter mechanism (in the context of a

request for reconsideration) in its Local Rule 2016-1(f), which states:

> (f) *Disposition Without Hearing:  Reduced Award.*  If the court without
> holding a hearing, awards an applicant less than the requested amount of
> compensation and reimbursement of expenses, an applicant's motion under
> Rule 9023 of the F.R.B.P. to alter or amend the order may include a request
> for a hearing on the application or be accompanied by a brief in support of
> the application.  Such a motion to alter or amend is governed by LBR 9014-
> 2, Motions Determined Without a Hearing, except that the court shall hold a
> hearing if an applicant requests a hearing.

L.B.R. 2016-1(f) (2005).   The Source for this local rule explains further:

> Subdivision (f).  If the court rules on a fee application without holding a
> hearing, an applicant may file a motion under F.R.B.P. 9023 to alter or
> amend the order.  This subdivision provides that if a Rule 9023 motion
> contains a request for a hearing, the court must hold a hearing before ruling
> on the Rule 9023 motion.  If the Rule 9023 motion does not contain a
> request for a hearing, the court may dispose of the motion under L.B.R.
> 9014-2 without a hearing.

Full due process protection is therefore afforded to a fee applicant whose

fee is reduced despite no advance notice.  Mr. Leinbach's due process rights, as described

in and required by Busy Beaver, were satisfied and protected even though I had issued the

March 14 2007 Order reducing his fees with no hearing.  Mr. Leinbach clearly had the

unqualified right under L.B.R. 2016-1(f) to request my reconsideration with a hearing

under Rule 9023 and I would have afforded him such a hearing.  He chose, however, not

to do so.

21

## VI.  ADDITIONAL REDUCTIONS IN ATTORNEYS' FEE AS A SANCTION

In addition to reducing his requested compensation by the amount of the fee attributable to the creditors' meeting that he attended on behalf of Debtors ($480), I reduced Mr. Leinbach's fee by a similar amount ($520) as a sanction.

Beginning in the Fall of 2006, through February 1, 2007, the date of the Faust and Wasilewski hearings (which resulted in fee reductions for overcharging time), and through more recent instances in which Mr. Leinbach's fees have been reduced for charging too much for hearings or meetings that could not have taken as much time as he said or that did not take place,[28] Mr Leinbach's fee applications continue to contain gross overcharges such as the overcharge in this case for attending the December 27, 2005 meeting, which Mr. Roth attended on behalf of multiple clients.  The Application was filed September 27, 2006, prior to the hearings and instances of reduced fees in the Fall. Long before my review of the Application, however, Mr. Leinbach was certainly aware that his system of time-keeping was inherently faulty and subject to mistakes, yet he allowed his Application to continue to move through the approval system with an entry of time for an event that should have been attributed to and prorated among several clients.

---

[28]See, e.g., In re Wise, No. 02-20931 (order dated March 8, 2007, and Opinion dated April 3, 2007, supporting and supplementing that Order, reducing fee and sanctioning Mr. Leinbach for charging three hours of time for a hearing he did not attend), and In re Bechtold, No. 06-20586 (order dated February 23, 2007, reducing fee for misidentifying the event for which time was charged as a hearing rather than a creditors' meeting and failing to properly prorate the time incurred in attending the creditors' meeting).

A.  The Court's Inherent Power To Sanction Attorneys

The Third Circuit Court of Appeals recognized the inherent power and authority of bankruptcy courts to sanction attorneys who act in bad faith when appearing before them in Leinbach v. Fein (In re Amoroso), 123 Fed Appx. 43, 47 (3d Cir. 2004).  I may not, and I would not want to, assess sanctions pursuant to my inherent power to sanction an attorney unless that attorney acted in bad faith.  Leinbach v. Fein, 123 Fed. Appx. at 47.  Mr. Leinbach is responsible for allowing faulty and incorrect fee applications to be prepared by his staff and for allowing recently and formerly prepared, faulty, and incorrect fee applications to continue through the approval system.  In the face of his certain knowledge that his time-keeping methodology is grossly deficient and faulty, Mr. Leinbach's persistence in advancing and pressing his erroneous fee applications constitutes bad faith.

Recently, Mr. Leinbach has withdrawn a number of fee applications.[29] Although he provided no express reason in his withdrawals of those fee applications, I would hope that he understands that he should withdraw and re-review every pending fee application that relies on his error-prone methodology for the re-creation of time entries. My prior orders in other cases, in which I reduced the amount of his fees only by eliminating or reducing the offending entries, have apparently not led him to put more care into his fee applications or to review those already filed.  Perhaps the sanction in this

---

[29]See, e.g., In re Colon, 01-22199; In re Asken, 05-20092; In re Honey, 05-23597.

23

case, as small as it is, will now cause him to do so.  On the other hand, perhaps further, more severe, sanctions will be necessary.

B.  Particularized Notice of Sanctions and Opportunity To Respond

The sanction in the March 14 2007 Order was imposed with sufficient particularized notice.  As explained in Leinbach v. Fein, 123 Fed. Appx. at 49, I must provide particularized notice and some opportunity to respond to afford Mr. Leinbach due process.

First, as in Leinbach v. Fein, Mr. Leinbach was clearly alerted to the issue for which he is being sanctioned, i.e., problems with his time-keeping for his fee applications beginning in Fall 2006, yet he continues to claim that he is upset because his staff let another overcharge slip through.  Mr. Leinbach must know that my questioning and finding errors in one after another of his fee applications must mean that he has a duty to review all fee applications more carefully to avoid continual overcharging.

Second, Mr. Leinbach's due process rights were fully protected by L.B.R. 2016-1(f).  If Mr. Leinbach had requested reconsideration of the entire March 14 2007 Order or merely the sanction aspect of my March 14 2007 Order, he would have been allowed a full and complete opportunity to present further evidence or argument on whatever issue he wanted to address.  He chose not to do so.  His due process rights were fully protected by both particularized prior notice and the opportunity to respond.


**VII.  CONCLUSION**

24

Mr. Leinbach has a history of imposing on the Court, his clients, and their

bankrupt estates fee applications that over-charge for work performed and that charge for

some work not performed. His protest that his fee applications are as good as possible

falls short of the mark because he has been utterly unsuccessful in monitoring

appropriately the accuracy of his applications. Mr. Leinbach's clear overcharge for Mr.

Roth's attendance at the December 27, 2005 creditors' meeting warrants reduction of his

fee application for the full amount charged for that event ($480).

The sanction imposed on Mr. Leinbach of a further reduction of his fees in

an amount similar to the overcharge ($520) is justified and appropriate. Mr. Leinbach's

due process rights were wholly protected by L.B.R. Rule 2016-1(f), which would have

allowed Mr. Leinbach to request reconsideration of any aspect of the March 14 2007

Order for further hearing or argument. Moreover, Mr. Leinbach clearly had prior

particularized notice that his fee applications generally and this Application in particular,

were faulty. He did nothing to supplement the record or justify his conduct, despite his

opportunity to do so through Local Rule 2016-1(f).

This Opinion supplements and supports the March 14 2007 Order and no

further order is necessary.

**Date:  April 9, 2007**                          BY THE COURT


_____

RICHARD E. FEHLING
United States Bankruptcy Judge

25